# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TRAVIS S. BROWN,** | * | **CIVIL ACTION** |
| **PETITIONER** | * | |
| | * | **NO. 17-cv-3190** |
| **VERSUS** | * | |
| | * | **SECTION "G" (5)** |
| **JASON KENT, WARDEN** | * | |
| **RESPONDENT** | * | |

## RESPONSE TO PETITION FOR *HABEAS CORPUS* RELIEF

### OVERVIEW

Travis S. Brown is a state prisoner incarcerated at the Dixon Correctional Institute in Jackson, Louisiana. He is serving an twenty year sentence as a result of his conviction for simple escape (La. R.S. 14:110) and his subsequent adjudication as a fourth felony offender (La. R.S. 15:529.1). Brown has petitioned this Court for a writ of habeas corpus, contending that his incarceration is in violation of his rights under the United States Constitution.

Brown's habeas petition is timely and his claims are exhausted, but his claims lack merit. Because Brown's claims lack merit, the Court should dismiss Brown's petition with prejudice and otherwise deny relief.

## TABLE OF CONTENTS

OVERVIEW..................................................................................................................1

PRELIMINARY MATTERS.......................................................................................3

    1. Custody.................................................................................................................3

    2. The state court record........................................................................................3

    3. The petitioner's claims.......................................................................................4

    4. Proceedings in the state courts (timeline)........................................................5

TIMELINESS...............................................................................................................7

EXHAUSTION..............................................................................................................8

PROCEDURAL DEFAULT..........................................................................................8

MERITS REVIEW........................................................................................................8

    1.    Overview of the applicable law.................................................................9

        1-1.    Claims adjudicated on the merits by state courts; deference owed............9

        1-2.    Sufficiency of the evidence..................................................................10

        1-3.    Ineffective assistance of counsel.........................................................11

    2.    The petitioner is not entitled to habeas corpus relief.............................12

        2-1.    The sufficiency of the evidence claim lacks merit....................................12

        2-2.    The ineffective assistance of counsel claim relating to the Motion to Quash lacks merit. ...............................................16

        2-3.    The ineffective assistance of counsel claims relating to the bill of information are without merit. ...................................17

        2-4.    The ineffective assistance of counsel claim alleging failure to investigate lacks merit.........................................................20

        2-5.    The ineffective assistance of counsel claim alleging failure to object during closing arguments lacks merit.............................22

CONCLUSION AND PRAYER....................................................................................24

CERTIFICATE OF SERVICE.....................................................................................25

PRELIMINARY MATTERS

**1.      Custody.**

The respondent does not dispute that the petitioner is in custody.

**2.      The state court record.**

Submitted along with this Response is the complete state court record relating to Brown's trial and collateral proceedings in the Louisiana courts, presented in ten volumes which have been imaged and sequentially numbered by undersigned counsel.

Volumes 1-5 consist of the record of the Louisiana First Circuit Court of Appeal under docket number 2013-KA-0814, in which petitioner sought direct review of his conviction and sentence. These volumes contain the entirety of the pretrial and trial proceedings in the matter of State v. Travis Brown, no. 476900 on the docket of the 22nd Judicial District Court for the Parish of St. Tammany, Louisiana. In addition, Volume 5 includes the pleadings and briefs filed in connection with the appeal from conviction.

Volumes 6 consists of the record of the Louisiana Supreme Court from the petitioner's writ application seeking review of the decision affirming his convictions and sentences (docket number 2014-K-0194). It includes the pleadings by which the petitioner sought supervisory review and the decision of the Louisiana Supreme Court denying relief.

Volume 7 consists of the record records from the 22nd Judicial District Court for the Parish of St. Tammany under docket number 476900, and contains all pleadings filed subsequent to the lodging of the appellate record with the Louisiana First Circuit Court of Appeal. It includes the judgment of the Louisiana First Circuit Court of Appeal denying relief on direct review. It also includes the petitioner's application for post-conviction relief and the respective judgment of the trial court denying relief.

Volume 8 consists of the record of the Louisiana First Circuit Court of Appeal under docket number 2015-KW-1229, in which petitioner sought review of the denial of his application for post-conviction relief. It includes the decision of the court denying relief.

Volume 9 consists of the record of the Louisiana Supreme Court under docket number 2015-KH-2155, in which petitioner sought further review of the denial of his application for post-conviction relief. It includes the decision of the court denying relief.

Finally, Volume 10 consists of the two writ applications the petitioner has filed with the Louisiana First Circuit Court of Appeal, under docket numbers 2016-KW-0710 and 2017-KW-0293, subsequent to the denial of his application for post-conviction relief.

**A note on citations to the record.**    In this pleading, counsel will refer to the State Court Record as "SCR" followed by the volume number and the page number superimposed upon the page by computer software. Accordingly, for example, "$SCR_6$ at 800" would refer to page 800, which is located in the sixth volume of the state court record.

### 3.     The petitioner's claims.

The petitioner lists his claims as follows:

1.    "The evidence was insufficient to support the simple escape conviction."[1]

2.    "The petitioner was provided ineffective assistance of counsel when trial counsel failed to object to and appeal the trial court's error denying the Motion to Quash."[2]

3.    "The petitioner was provided ineffective assistance of counsel when trial counsel [(a)] failed to object to the amendment of the bill of information on the day of trial and [(b)] failed to file a Motion in Arrest of Judgment for the defective invalid amendment to the bill of information which constituted double jeopardy."[3]

---

1   Rec. Doc. 3, pp. 10-12.

2   Rec. Doc. 3, pp. 12-13.

3   Rec. Doc. 3, pp. 13-20.

4.      "The petitioner was provided ineffective assistance of counsel when trial [(a)] failed to investigate and subpoena [the police] dispatch[er]'s response to show no escape happened as well as [(b)] failed to make contemporaneous objections during cross examination and closing arguments by the prosecutor when the district attorney misled the jury and made prejudicial arguments."[4]

## 4.      Proceedings in the state courts (timeline).

The timeline of pertinent proceedings is as follows:

### A.      Proceedings leading to conviction and sentence.

October 25, 2010.      Bill of Information filed; petitioner charged with the crime of resisting arrest with force or violence (La. R.S. 14:108.2).[5]

October 5, 2011.      Bill of Information amended; petitioner charged with additional crime of simple escape (La. R.S. 14:110).[6]

September 19, 2012.   Jury trial; petitioner found guilty of a lesser offense as to Count 1 (resisting arrest) and guilty as charged as to Count 2 (simple escape).[7]

December 17, 2012.   Sentencing: petitioner sentenced to six months as to Count 1 and five years as to Count 2.[8]

December 17, 2012.   Re-sentencing: petitioner adjudicated a fourth-felony offender, sentenced to twenty years as to Count 2.[9]

### B.      Direct review proceedings.

December 27, 2013.   Conviction and sentence affirmed: *State v. Brown*, 2013-KA-0814 (La. App. 1 Cir. 12/27/13), unpub'd.[10]

January 27, 2013.      Brown timely files a writ application to the Louisiana Supreme Court.[11]

---

4   Rec. Doc. 3, pp. 20-29.

5   $SCR_3$ at 350.

6   $SCR_1$ at 37.

7   $SCR_1$ at 24-28.

8   $SCR_1$ at 32-33.

9   $SCR_1$ at 34-35.

10  $SCR_7$ at 866-875.

11  $SCR_6$ at 783-798. Thirty days from December 27, 2013 is January 26, 2014. Because January 26, 2014 fell on a

| | |
|---|---|
| June 20, 2014. | The Louisiana Supreme Court denies writs. *State v. Brown*, 14-0194 (La. 6/20/14), 141 So.3d 808.[12] |

Brown did not submit a petition for writ of certiorari to the United States Supreme Court.[13]

### C.    Collateral review proceedings.

| | |
|---|---|
| April 15, 2015. | Brown files an application for post-conviction relief.[14] |
| July 8, 2015. | The district court denies the application for post-conviction relief.[15] |
| August 5, 2015. | Brown files an application for supervisory review with the Louisiana First Circuit Court of Appeal concerning the denial of the application for post-conviction relief.[16] |
| November 4, 2015. | The Louisiana First Circuit Court of Appeal denies relief. *State v. Travis Brown*, 15-KW-1229 (La. App. 1 Cir. 11/04/15), unpub'd.[17] |
| November 19, 2015. | Brown files an application for supervisory review with the Louisiana Supreme Court with respect to the denial of post-conviction relief.[18] |
| March 31, 2017. | The Louisiana Supreme Court denies relief, stating: "Relator fails to show he received ineffective assistance of counsel under the standard of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." *State ex rel Brown v. State*, 15-2155 (La. 3/31/17), 214 So.3d 845.[19] |

---

Sunday, which is a legal holiday, and the writ application was filed the next day, the writ application was timely filed. See La. Sup. Ct. Rule X, § 5(a); La. C.Cr. P. art. 13; La. R.S. 1:55(A)(1).

12  $SCR_6$ at 782.

13  See ECF Doc. 3, pg. 2, answer to question 9(h).

14  $SCR_7$ at 886-901. Although stamped as filed April 22, 2015 ($SCR_6$ at 886), the date of filing for purposes of the mailbox rule is April 15, 2015 ($SCR_6$ at 889, 901).

15  $SCR_7$ at 937.

16  $SCR_8$ at 1047-1069. The application is not dated by the petitioner ($SCR_8$ at 1069). Accordingly, the respondent uses the date of filing ($SCR_8$ at 1047). The writ application was timely, without regard to the mailbox rule, because it was received by the appellate court within thirty days of the trial court's ruling.

17  $SCR_8$ at 1045-1046.

18  $SCR_9$ at 1113-1136. The writ application was received by the Louisiana Supreme Court on November 25, 2015, and came in an envelope postmarked November 20, 2015 ($SCR_6$ at 1113). This is consistent with the November 19, 2015 date listed by the petitioner on the certificate of service ($SCR_9$ at 1136).

19  $SCR_9$ at 1109-1112.

The petitioner also filed other pleadings unrelated to the claims he raises in the federal habeas corpus petition: some alleged that the sentence was illegal;[20] some requested reconsideration of the term of years imposed,[21] and some requested production of documents.[22] The dates of filing and disposition of these motions do not affect the analysis of the timeliness of the petition.

<u>TIMELINESS</u>

Brown's conviction and sentence became "final" on September 18, 2014 because that date is 90 days after the Louisiana Supreme Court denied writs on direct review.[23] Brown properly filed an application for post-conviction relief on April 15, 2015,[24] and that application remained pending until the Louisiana Supreme Court ultimately denied relief on March 31, 2017.[25] Brown submitted his habeas corpus petition on April 6, 2017.[26]

The tolling calculations under 28 U.S.C. § 2244(d)(2) are as follows:

- two hundred nine (**209**) untolled days were expended between September 18, 2014 (the date the conviction became final) and April 15, 2015 (the date the petitioner filed the application for post-conviction relief);

- the period of limitation was tolled from April 15, 2015 through March 31, 2017 (the period of time the application for post-conviction relief remained pending); and

- an additional six (**6**) untolled days were expended between March 31, 2017 (the date the application for post-conviction relief ceased to be pending) and April 6, 2017 (the date the federal habeas corpus petition was filed).

The petitioner has a one year period—that is, 365 days—to apply for a writ of habeas corpus,

---

20  See SCR$_7$ at 968-979, 996-1003; SCR$_{10}$ at 1190-1231.

21  See SCR$_7$ at 942-946, 1027-1033.

22  See SCR$_7$ at 1021-1024; SCR$_{10}$ at 1233-1246.

23  See Paredes v. Quarterman, 574 F.3d 281, 287 & n. 4 (5th Cir. 2009); SCR$_6$ at 782 (Louisiana Supreme Court writ denial); Rec. Doc. 3, pg. 2, answer to question 9(h) (admission by petitioner that he did not seek review from the United States Supreme Court).

24  SCR$_7$ at 886-901, particularly pp. 889, 901.

25  SCR$_9$ at 1109-1112.

26  ECF Doc. 3, pg. 7.

and it appears that only 215 days (209+6) passed before he applied for a writ of habeas corpus.

The respondent therefore does not allege that the application is untimely.

## EXHAUSTION

Each claim the petitioner presents in his habeas corpus petition were presented to the state district court, the state intermediate appellate court, and the Louisiana Supreme Court:

- As for Claim 1, see $SCR_1$ at 119-126 (claim raised in district court); $SCR_5$ at 741-747 (claim raised to Louisiana First Circuit Court of Appeal); $SCR_6$ at 793-797 (claim raised to Louisiana Supreme Court).

- As for Claim 2, see $SCR_7$ at 893-894 (claim raised in district court); $SCR_8$ at 1053-1057 (claim raised to Louisiana First Circuit Court of Appeal); $SCR_9$ at 1121-1124 (claim raised to Louisiana Supreme Court).

- As for Claim 3, see $SCR_7$ at 894-897 (claim raised in district court); $SCR_8$ at 1057-1062 (claim raised to Louisiana First Circuit Court of Appeal); $SCR_9$ at 1124-1129 (claim raised to Louisiana Supreme Court).

- As for Claim 4, see $SCR_7$ at 897-901 (claim raised in district court); $SCR_8$ at 1062-1068 (claim raised to Louisiana First Circuit Court of Appeal); $SCR_9$ at 1130-1135 (claim raised to Louisiana Supreme Court).

The respondent does not allege that any of the petitioner's claims are unexhausted.

## PROCEDURAL DEFAULT

The respondent does allege any of the petitioner's claims to be procedurally defaulted.

## MERITS REVIEW

The Louisiana First Circuit Court of Appeal addressed the petitioner's sufficiency of the evidence arguments (designated by the respondent as Claim 1) as follows: "In his sole assignment of error, the defendant argues the evidence was insufficient to support the simple escape conviction. . . . This assignment of error is without merit." $SCR_7$ at 869-874.

The Louisiana Supreme Court addressed the petitioner's ineffective assistance of counsel claims (designated by the respondent as Claims 2, 3, 4) as follows: "Relator fails to show he

received ineffective assistance of counsel under the standard of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)." SCR[9] at 1111.

Each of the petitioner's claims were adjudicated "on the merits."

### 1.       Overview of the applicable law.

### 1-1.       Claims adjudicated on the merits by state courts; deference owed.

For federal constitutional claims which have been adjudicated on the merits, the standard of review is set forth in 28 U.S.C. § 2254. A state court's resolution of disputed facts is "presumed to be correct"[27] and is owed deference unless "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[28] The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."[29]

A state court's resolution of questions of law—and of mixed questions of law and fact—are owed deference unless such resolution "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."[30]

A state court decision is "contrary to" clearly established Federal law if "the state court applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different."[31]

A state court decision involves an "unreasonable application" of clearly established Federal law only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law

---

27   28 U.S.C. § 2254(e)(1).

28   28 U.S.C. § 2254(d)(2).

29   28 U.S.C. § 2254(e)(1).

30   28 U.S.C. § 2254(d)(1).

31   Williams v. Taylor, 529 U.S. 362, 405-406 (2000).

beyond any possibility for fairminded disagreement."[32]

Importantly, "[b]ecause only Supreme Court jurisprudence provides 'clearly established Federal law' under section 2254(d), where Supreme Court jurisprudence 'gives no clear answer to the question presented, let alone one in petitioner's favor, it cannot be said that the state court unreasonably applied clearly established federal law.' "[33]

### 1-2.    Sufficiency of the evidence.

Review of sufficiency of the evidence claims in federal habeas corpus proceedings is governed by Jackson v. Virginia, 443 U.S. 307 (1979). Under that case, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[34] Phrased differently, a petitioner is entitled to relief "only if it is found that upon the record evidence adduced at the trial *no* rational trier of fact could have found proof of guilt beyond a reasonable doubt."[35] Importantly, sufficiency-of-the-evidence review does not include review of the weight of the evidence or the credibility of the witnesses, because "draw[ing] reasonable inferences from basic facts to ultimate facts" is the exclusive province of the jury.[36]

To determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.[37]

Because the state court's decision applying the already deferential Jackson standard must

_____

32  Harrington v. Richter, 562 U.S. 86, 103 (2011).

33  Wilson v. Cain, 641 F.3d 96, 100 (5th Cir. 2011), citation omitted.

34  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). See also id. at 326 ("a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

35  West v. Johnson, 92 F.3d 1385, 1393 (5th Cir. 1996) (emphasis supplied, citation omitted).

36  Gonzales v. Cain, 14-2448 (E.D. La. 11/10/15), 2015 WL 7017058, at *10 (citations omitted).

37  Coleman v. Johnson, 132 S.Ct. 2060, 2064 (2012), citing Jackson, 443 U.S. at 324 n. 16.

be assessed under the standards of review mandated by the AEDPA, the habeas court's review of

sufficiency of the evidence clais is "twice-deferential."[38]

### 1-3.    Ineffective assistance of counsel.

The review of ineffective assistance of counsel claims in federal habeas corpus

proceedings is as follows:

> To establish that he was denied constitutionally effective assistance of counsel, [the petitioner] must demonstrate that (1) counsel rendered deficient performance, and (2) counsel's actions resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687-88, 690 (1984). Both of these prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong. Id. at 687. The deficient performance prong requires proof that,  in light of all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. In determining whether counsel's performance was deficient, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). The Supreme Court has admonished that judicial scrutiny of counsel's performance "must be highly deferential," and avoid "the distorting effect of hindsight." Id. at 689-90. To demonstrate prejudice, the second prong, [the petitioner] must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Supreme Court has further held that the likelihood of a different outcome must be "substantial, not just conceivable." Harrington [v. Richter] 131 S. Ct. 770 (2011)], at 792.
>
> Viewing the Strickland test from the narrow perspective afforded federal courts by AEDPA results in even greater deference to the state courts' judgment. This  is because , "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,'... and when the two apply in tandem, review is 'doubly so.' " Harrington, 131 S. Ct. at 788 (citations omitted).[39]

---

38  Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012).

39  Williams v. Stephens, 761 F.3d 561, 566-567  (5th Cir. 2014).

    **2.**       **The petitioner is not entitled to habeas corpus relief.**

       **2-1.**    **The sufficiency of the evidence claim (Claim 1) lacks merit.**

           **a.**     **The details of the petitioner's claim.**

The petitioner argues that "the State did not prove he was in lawful custody as required by the simple escape statute." ECF Doc. 3, pg. 10.

           **b.**     **The offense of conviction.**

The offense of conviction, simple escape, is defined by Louisiana law as "[t]he intentional departure, under circumstances wherein human life is not endangered . . . from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections." La. R.S. 14:110(A)(1).

           **c.**     **The state court adjudication of the petitioner's claim.**

The Louisiana First Circuit Court of Appeal summarized the pertinent facts as follows:

> On September 14, 2010, Agent Carli Messina,[*] the defendant's parole officer with the Louisiana Department of Public Safety and Corrections ("Probation and Parole"), was attempting to make contact with the defendant to arrest him on a parole warrant for a parole violation. When it was determined through an anonymous tip that the defendant would be on Third Street in Mandeville, Louisiana, four agents, including Agent Messina, in three patrol units converged on that location. The other three agents were Joseph Cotton, Brandon Pohlmann, and Lindsey Norton, all with Probation and Parole. The unmarked units had emergency lights on the front and rear of them. Agent Pohlmann was wearing a shirt with a gold Louisiana badge on the chest. The other three agents were wearing a black tactical vest with the word "POLICE" on the front and back. As the defendant was preparing to drop his wife off at work, he passed near Agent Messina's vehicle and saw her. When the defendant recognized his parole officer, he kept driving. The three units followed the defendant with their emergency lights on, but the defendant continued to drive. When the defendant eventually came to a stop, Agent Cotton pulled his unit in front of the defendant's vehicle and Agent Pohlmann pulled his unit directly behind the defendant's vehicle. Agents Cotton and Pohlmann approached the defendant's vehicle with weapons drawn, identified themselves as the

---

\*   After the arrest of the petitioner, and before the trial, Agent Messina got married and changed her name to Carli Farrell. She therefore is identified in the trial transcript as Carli Farrell. See SCR₁ at 169, lines 10-11.

police and shouted at the defendant to show his hands. The defendant raised his hands. They then ordered the defendant to put the vehicle in park and to turn off the engine. The defendant complied without incident.

Agent Pohlmann holstered his weapon and removed the defendant from the vehicle. Agent Pohlmann then applied an arm bar – a type of compliant escort technique – on the defendant and escorted the defendant to the back of the defendant's car. An eyewitness to this event, Zachary Lloyd, testified at trial that he saw the parole officers make the defendant place his hands on the trunk. When the defendant saw Agent Messina approach him with handcuffs, the defendant broke away from Agent Pohlmann's hold and began to run away. Agents Cotton and Pohlmann immediately caught up with the defendant and attempted to subdue him; however, the defendant fought to break away and, during the struggle, he managed to slip out of the basketball jersey he was wearing and run away.

When the defendant broke away from Agents Cotton and Pohlmann, he outran them until the agents lost sight of him. Agent Norton radioed St. Tammany Parish Sheriff's Office for assistance. A perimeter was set up and the Sheriff's Office sent the canine division and a helicopter to locate the defendant. At about 2:30 p.m. the search was called off because children were being dismissed from the schools in the area. The next day, after speaking with the defendant's wife, the police found the defendant at a Super Eight Motel in Covington. The defendant was arrested without incident.

State v. Brown, 2013-KA-0814, pp. 2-4 (La. App. 1 Cir. 12/27/13), unpub'd (SCR[7] at 867-869).

The Louisiana First Circuit Court of Appeal then analyzed the petitioner's sufficiency-of-the-evidence claim as follows:

The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). . . .

The defendant argues that the State did not prove he was in lawful custody as required under the simple escape statute. The defendant contends he was not in lawful custody when he ran from the officers. According to the defendant, the officers had not placed him under arrest, handcuffed him, or told him there was an arrest warrant for his arrest; rather the only actions the officers took before the defendant ran was to have him exit the vehicle and escort him to the back of that vehicle.

The substance of the defendant's contention is that he was not in custody,

i.e., under arrest, at the time he fled. If the defendant was fleeing to avoid arrest, then he cannot be guilty of simple escape. Thus, the issue is whether the defendant was under arrest at the time he fled from the agents.

Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him. La. Code Crim. P. art. 201. An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused . . . .

[Discussion of state law omitted for the sake of brevity.]

[Here,] the circumstances clearly indicate an intent by the agents to effect an extended restraint on the liberty of the agents. The defendants were executing a parole warrant for a parole violation. The agents surrounded the defendant's vehicle with their units to prevent him from driving any further. With their weapons drawn, the agents shouted commands at the defendant. The defendant was ordered to show his hands, park the vehicle and turn off the engine. The defendant complied immediately without incident. The defendant was then physically removed from the vehicle and escorted by arm-bar to the back of the vehicle. At this point, the defendant had submitted himself to the custody of the agents. See La. Code Crim.P. art. 201. The defendant proceeded to break away from the agent to avoid being handcuffed. When the defendant ran and was subdued shortly thereafter by the two male agents, the defendant struggled again to get away. During this fracas, the agents trying to subdue the defendant were screaming at him to stop resisting. When the defendant broke away, the agents chased him, but the defendant kept running until he could no longer be seen or found. All of the actions by the agents indicated an intent to restrain the defendant for an extended period, and the defendant's reaction to the agents, in doing anything in his power to not remain constrained, clearly suggests he knew or should have known he was under arrest. The totality of the circumstances evidence a restraint on the defendant's liberty to an extent that any reasonable person would have believed he was in custody.

The jury heard the testimony and viewed the evidence presented to it at trial and found the defendant guilty. It is clear from the finding of guilt that the jury believed Agents Messina's and Pohlmann's version of events. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Id. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. We

are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. The assignment of error is without merit.

State v. Brown, 2013-KA-0814, pp. 4-9 (La. App. 1 Cir. 12/27/13), unpub'd (SCR₇ at 869-874) (some citations omitted).

### e. The state court adjudication was consistent with federal law.

The legal question before the Court is whether a rational trier of fact could conclude that the petitioner was "in lawful custody" within the meaning at the time of his escape within the meaning of La. R.S. 14:110(A).

The state court record shows that, after locating the petitioner, two officers blocked in the petitioner's vehicle: "Agent Cotton pulled his unit in front of the defendant's vehicle and Agent Pohlmann pulled his unit directly behind the defendant's vehicle." Then, with weapons drawn, the officers identified themselves as police and ordered the defendant to show his hands. The defendant complied. They told him to put his vehicle into park and turn off the engine. He complied again. One of the officers (Agent Pohlmann) used a "complian[ce] escort technique" to remove the petitioner from his vehicle, and escorted the petitioner to the rear of the petitioner's vehicle. Agent Pohlmann then then placed the petitioner's hands onto the trunk of the vehicle. The petitioner remained there until a third officer approached with handcuffs, at which time the petitioner "broke away from Agent Pohlmann's hold and began to run away."

A rational trier of fact could conclude that the defendant—who had been removed from his vehicle by an officer, then had his hands pinned to the back of his car by that same officer who was employing a compliance escort technique—was "in custody" at the time of his escape. The record also shows that, at the time this incident occurred, there was an outstanding warrant for the

petitioner's arrest. A rational trier of fact could therefore conclude that the petitioner was not merely "in custody," but was "in lawful custody."

The evidence is sufficient. The petitioner is not entitled to relief based upon this claim.

### 2-2. The ineffective assistance of counsel claim relating to the *Motion to Quash* (Claim 2) lacks merit.

#### a. The details of the petitioner's claim.

The petitioner argues as follows:

> Mr. Brown was denied effective assistance of counsel when counsel failed to object to the trial court's denial of the Motion to Quash, count two of the Bill of Information. . . . Solid grounds existed for the motion to quash to be granted, and trial counsel failed to object to the trial court denying the motion. Strickland v. Washington, 466 U.S. 688 [(1984)].

> During the hearing on the motion to quash, the trial court acknowledged that there wasn't a bill of particulars or any facts to support the simple escape offense. Had trial counsel object and investigated the motion that he filed, Mr. Brown would have been tried for the resisting arrest by force or violence by itself.

ECF Doc. 3, pp. 12-13.

#### b. The pertinent portions of the state court record.

The state court record reflects that defense counsel filed a written motion to quash on August 27, 2012. $SCR_1$ at 88-92. The state district court heard that motion on September 19, 2012, prior to jury selection. $SCR_1$ at 24. After listening to arguments of counsel, the state district court determined that "we have a factual defense to this case in that you're alleging Mr. Brown was not detained by the officer" and denied the motion because "[t]he question of factual guilt of the charged is not raised by a motion to quash." $SCR_1$ at 164-169.

#### c. This claim lacks merit.

The state courts found that the petitioner failed to demonstrate ineffective assistance of counsel. This was reasonable for two reasons.

First, the premise of the petitioner's claim—that counsel did not object to the ruling—is not quite correct. Louisiana's contemporaneous objection rule provides: "The requirement of an objection shall not apply to the court's ruling on any written motion." La. C.Cr. P. art. 841(B). The motion to quash was a written motion (SCR₁ at 88-91). The state district court's denial of the motion to quash was therefore a "ruling on any written motion" (La. C.Cr. P. art. 841B). Thus, as a matter of law, no contemporaneous verbal objection was required.

Second, another premise of the petitioner's claim—that "[s]olid grounds existed for the motion to quash to be granted"—is purely conclusory. The petitioner does not *identify* the "solid grounds" that existed for the granting of such a motion. That is most likely because the trial court's ruling was correct as a matter of Louisiana law: allegations that the prosecution cannot meet its burden of proof may not be raised in a pre-trial motion to quash.[40]

The state courts' conclusion that the petitioner failed to demonstrate deficient performance or prejudice was not contrary to clearly established federal law, nor was it an unreasonable application of clearly established federal law.

### 2-3.   The ineffective assistance of counsel claims relating to the bill of information (Claim 3) are without merit.

#### a.   The details of the petitioner's claim.

The petitioner in the heading to "Claim #2" complains about counsel's failure "to object

---

40 See, e.g., State v. Robertson, 92-0339 (La. App. 1 Cir. 3/5/93), 615 So.2d 1036, 1038-1039 ("[D]efendant filed this motion to quash the bill of information on the basis that, because the victim had died, it was impossible for the State to prove an essential element of simple arson, i.e., lack of consent of the owner. However, the sufficiency of the proof of this offense was a question for the jury to decide and was not properly raised in this motion."); State v. Jordan, 97-1756 (La. App. 4 Cir. 9/16/98), 719 So.2d 556, 563 ("[T]he defendant alleges that the state does not have sufficient evidence to support its allegation that the defendant had the specific intent to kill more than one person. As this issue goes to the merits of the charge, it was improperly raised in the defendant's motion to quash. The trial court correctly denied the defendant's motion to quash."); State v. Lauff, 06-717 (La. App. 5 Cir. 2/13/07), 953 So.2d 813, 819 ("[T]he issues raised in the defendant's motion to quash relate solely to her guilt or innocence, in that she contends the State's evidence could not prove the requisite intent for murder beyond a reasonable doubt. Because these issues are factual matters that relate to the merits of the case, they were not properly raised in a motion to quash.").

to the amendment of the bill of information on the day of trial." ECF Doc. 3, pg. 13. However, under the "Law and Argument" section, he does not advance that argument and instead advances two more arguments. He argues that his convictions for simple escape in violation of La. R.S. 14:110(A) and for resisting an officer in violation of La. R.S. 14:108 "constituted double jeopardy" and that "[t]rial counsel failed to file the motion to quash based on double jeopardy and a motion for arrest of judgment for double jeopardy." ECF Doc. 3, pp. 13-18. He also argues that "[t]he bill of information used to prosecute Petitioner was substantially defective, as it it was in violation of his Sixth Amendment right to notice of the charge." *Id*., pp. 19-20.

  **b.** **The claim that counsel was ineffective for failing to object to "the amendment of the bill of information on the day of trial" is without merit.**

  The state court record shows that defense counsel *did* object to the amendment of the bill of information on the day of trial. See SCR$_1$ at 37; SCR$_1$ at 163, line 21 ("I would object").  The trial court overruled the objection. SCR$_1$ at 163, lines 24-27 ("I don't see any prejudice . . . so the Court is going to allow the amendment."). The argument that trial counsel was ineffective for failing to object to the amendment of the bill of information is without merit because counsel did in fact object to the amendment of the bill of information.

  **c.** **The double jeopardy claim is without merit.**

  The Double Jeopardy Clause protects against "a second prosecution for the same offense after acquittal," "a second prosecution for the same offense after conviction," and "multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977) (citation omitted). The petitioner argues that the third circumstance applies to him.

  The third circumstance does not apply here because the evidence shows the commission of two separate offenses.

*First*, "[t]he agents surrounded the defendant's vehicle with their units to prevent him from driving any further. With their weapons drawn, the agents shouted commands at the defendant. The defendant was ordered to show his hands, park the vehicle and turn off the engine. The defendant complied immediately without incident. The defendant was then physically removed from the vehicle and escorted by arm-bar to the back of the vehicle. At this point, the defendant had submitted himself to the custody of the agents. The defendant proceeded to break away from the agent to avoid being handcuffed." SCR$_7$ at 873. The petitioner, after submitting himself to the custody of the agents, proceeded to break away from the agents. *That* was the simple escape. *Then*, two agents chased after the petitioner. They caught up with him, and a "fracas" ensued in which "the agents trying to subdue the defendant were screaming at him to stop resisting." SCR$_7$ at 873. But "during the struggle, he managed to slip out of the basketball jersey he was wearing and run away." SCR$_7$ at 868-869. *That* was the resisting an officer.

There were no valid grounds for asserting a double jeopardy violation because the defendant was punished for separate offenses, not the same offense. Counsel's failure to file a non-meritorious motion was not ineffective assistance of counsel. The state courts' conclusion that the petitioner failed to demonstrate deficient performance or prejudice was not contrary to clearly established federal law, nor was it an unreasonable application of clearly established federal law.

>        c.        **The claim that the bill of information was "defective" is**
>                  **without merit.**

The jurisprudence applicable to this claim provides:

> "It is settled in this Circuit that the sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir.1980). See also Meyer v. Estelle, 621 F.2d 769, 771 (5th Cir.1980); Murphy v. Beto, 416 F.2d 98, 100 (5th Cir.1969). This Court has also observed that habeas corpus can be invoked with respect to the sufficiency of an indictment only when the

> indictment is so fatally defective that under no circumstances could a valid
> conviction result from facts provable under the indictment, and that such a
> determination "can be made only by looking to the law of the state where
> the indictment was issued." Johnson v. Estelle, 704 F.2d 232, 236 (5th
> Cir.1983) (emphasis added). Specifically, the conclusion as to whether a
> state trial court was deprived of jurisdiction by a fatally defective indictment
> is a question foreclosed to a federal habeas court "[w]hen it appears ... that
> the sufficiency of the indictment was squarely presented to the highest court
> of the state on appeal, and that court held that the trial court had jurisdiction
> over the case." Murphy v. Beto, 416 F.2d 98, 100 (5th Cir.1969).

Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984).

In denying petitioner's claim, the state courts necessarily found that the indictment—or here, bill of information, cf. La. C.Cr. P. art.934(6)—was legally sufficient as a matter of state law. For that reason, law, this claim is without merit.

### 2-4.   The ineffective assistance of counsel claim alleging failure to investigate (Claim 4a) lacks merit.

#### a.   The details of the petitioner's claim.

The petitioner argues: "Trial Counsel failed to investigate and subpoena the dispatch response to see what criminal act was called in to dispatch for back up by [Agent Messina] . . . . Had trial counsel investigated, the evidence would have shown that they did not call in an escaped parolee. The Louisiana Probation and Parole, Affidavit for Arrest Warrant does show the charge that was called in to dispatch for back up (resisting arrest by force or violence), not an (escape parolee) as the prosecutor mislead the Jury to believe with the exaggeration of events in the alleged effort to look for petitioner." ECF No.3, pp. 28-29.

#### b.   The pertinent portions of the state court record.

The state court record shows that trial counsel filed a *Motion for Subpoena Duces Tecum for Dispatch and All Other Communication Tapes* on May 25, 2011, and that motion was granted by the state district court on May 31, 2011. SCR$_1$ at 74-75.

The state court record also reflects that trial counsel cross-examined Detective Messina about her police report and her arrest warrant as follows:

> Q:     Can you identify that exhibit?
>
> A:     Uh-huh. This is the affidavit for an arrest warrant. . . .
>
> Q:     And probable cause in this case was [found by the judge for] charging Travis Brown with what charge?
>
> A:     14:108.2, which is Louisiana Revised Statute for resisting a police officer with force or violence.
>
> Q:     You never asked for an arrest warrant for escape, did you?
>
> A:     No, I did not.
>
> Q:     And you didn't mention escape in your police report either, did you?
>
> A:     No.

SCR$_1$ at 221-222. See also SCR$_3$ at 352-358 (police reports and arrest warrant).

### c.     The failure-to-investigate claim is without merit.

The state court record shows that trial counsel actually did what the petitioner says he should have done: trial counsel subpoenaed the dispatch records, and familiarized himself with the Agent Messina's affidavit and report, and brought to the jury's attention the fact that the petitioner had not been arrested or booked for simple escape. The jury apparently credited Agent Messina's testimony on redirect, which was:

> Q:     Detective, you were asked about the arrest warrant that you had typed out in this particular matter. . . . [O]n that day, you just typed on arrest warrant on one charge?
>
> A:     Correct.
>
> Q:     You could have done three or four charges if you wanted to?
>
> A:     I could have.
>
> Q:     But instead you just booked him with the one and you let the DA's Office decide what was appropriate to prosecute him with?
>
> A:     That's correct.

SCR$_1$ at 227-228. See also La. C.Cr. P. art. 61; La. R.S. 14:4.

The state courts' conclusion that the petitioner failed to demonstrate deficient performance or prejudice was not contrary to clearly established federal law. Nor was it an unreasonable application of clearly established federal law.

### 2-5.   The ineffective assistance of counsel claim alleging failure to object during closing arguments (Claim 4b) lacks merit.

#### a.   The details of the petitioner's claim.

The petitioner argues that the prosecutor's closing arguments was "misleading" because the prosecutor argued he was guilty of simple escape, and he thinks he wasn't guilty of that crime:

> During closing arguments by the state, the prosecutor misled the Jury See Exhibits, (the original Post Conviction Relief and trial transcripts), (page 275 of the trial transcripts lines 25-30) when he stated;
>
> > "You know simple escape shows that he's departing from lawful custody or from being detained when you a lawful arrest seeking to be made."
>
> This is an inaccurate interpretation of statute (**La. R.S.14:110**) and misleads the Jurors' to believe elements of the statute that do not apply to the case, as well as is prejudicial for the Jury to hear. **Simple Escape** states that;
>
> > (1) The **intentional departure**, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.
>
> The statute does not read "**departing from being detained when you a lawful arrest seeking to be made.**" The state prejudiced the minds of the Jury leading them to believe that Petitioner was detained and departed a lawful arrest seeking to be made because they had a warrant for his arrest. That is not an accurate reading of the statute.

ECF Doc. 3, pg. 21.

Detective Messina testified during the trial that the St. Tammany Parish Sheriff's Office sent the canine division, the street crimes unit, the narcotics division, the special operations division, and a helicopter to locate the defendant. $SCR_1$ at 201-202. The petitioner complains that "trial counsel failed to object to the relevance of" this testimony and also that it was "unfairly prejudicial." ECF Doc. 3, pg. 22. During closing arguments, the prosecutor referenced Agent Messina's testimony:

> … if you're tempted to think that this case is unimportant, that it's not -- it really doesn't matter, it's a parolee trying to get away, fighting with his parole agents, look at the response that the sheriff's office had once they were notified that this had happened. That they were looking for an escaped parolee.
>
> You've got helicopters, canine units, the narcotics division is called out, street crimes, the special operations division. Basically the sheriff's office SWAT team. You've got road patrol. Mandeville PD even comes out. You've got a multi-agency effort at this point. So make no mistake, ladies and gentlemen, this case matters. It's important.

$SCR_2$ at 298. The petitioner argues that the prosecutor "misl[ed] the Jury to believe the case was bigger than it appeared to be." ECF Doc. 3, pg. 23.

Finally, the petitioner argues (again) that the prosecutor misled the jury by characterizing his actions as an escape from custody because "[t]he Louisiana Probation and Parole, Affidavit for Arrest Warrant shows that the detectives called on to dispatch a (resisting arrest by force or violence) <u>not</u> an (escape[d] parolee)."

### b.      These claims are without merit.

Louisiana law provides that closing arguments "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom." La. C.Cr. P. art. 774. The prosecutor argued that, based upon the evidence admitted, the defendant was guilty of the charged offense. There is nothing legitimately objectionable about that. The testimony regarding the attempts to locate the petitioner were probative because they explained

the events leading to the ultimate apprehension of the petitioner. The argument that "this case matters" is wholly proper as a matter of convincing the jury that a verdict of guilty as charged—rather than guilty of a responsive verdict—would be morally reasonable. <u>See</u> <u>United States v. Old Chief</u>, 519 U.S. 172, 187-188 (1997) (recognizing that the prosecution must not only prove facts but also "establish [their] human significance . . . to implicate the law's moral underpinnings and a juror's obligation to sit in judgment").

Because there were no valid objections to be lodged, the state courts' conclusion that the petitioner failed to demonstrate deficient performance or prejudice was not contrary to clearly established federal law nor was it an unreasonable application of clearly established federal law.

<u>CONCLUSION AND PRAYER</u>

For the reasons stated above, Brown's claimsm lack merit. Therefore, he is not entitled to the relief he seeks. The respondent, Jason Kent, respectfully prays that the petition for habeas corpus be denied and dismissed with prejudice.

Respectfully Submitted,

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney
22nd Judicial District – Parishes of
      St. Tammany and Washington
701 N. Columbia Street
Covington, Louisiana 70433
Tel: (985) 809-8398
Email: mcaplan@22da.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served the foregoing pleading by sending it via USPS first-class mail, addressed as follows:

> Travis S. Brown, DOC # 413039
> Dixon Correctional Institute
> 5568 La. Highway 68
> Jackson, LA 70748
> *Petitioner, pro se*

This the <u>13th</u> day of <u>July</u>, 2017, at Covington, Louisiana.

/s/ Matthew Caplan
Matthew Caplan, #31650
Assistant District Attorney
