## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**TRAVIS S. BROWN**                                                        **CIVIL ACTION**

**VERSUS**                                                                 **NO.   17-3190**

**JASON KENT, WARDEN**                                                     **SECTION:   "G"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.   *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

Petitioner, Travis S. Brown, is a convicted inmate currently incarcerated at the Dixon Correctional Institute in Jackson, Louisiana.   On October 25, 2010, Brown was charged by bill of information with resisting arrest with force or violence in violation of La. Rev. Stat. § 14:108.2.[1]   On October 5, 2011, Brown was charged by an amended bill of information with the additional charge of simple escape in violation of La. Rev. Stat. § 14:110.[2]   On September 1, 2012, a jury found Brown guilty of resisting an officer, a lesser offense as to

---

[1] State Rec., Vol. 3 of 10, Bill of Information, 10/25/10.

[2] State Rec., Vol. 1 of 10, Amended Bill of Information, 10/5/11; Minutes, 10/5/11.

count one, and guilty of simple escape (count two).[3]    On December 17, 2012, Brown was

sentenced to six months as to count one and five years as to count two.[4]

The State filed a multiple-offender bill of information charging Brown as a fourth-

felony offender.[5]    Brown entered a guilty plea to the multiple bill, and the state district

court vacated the original sentence as to count two and re-sentenced him as a multiple

offender to 20 years at hard labor without the benefit of probation or suspension of

sentence.[6]

On direct appeal, Brown asserted that the evidence was insufficient to support the

simple escape conviction.[7]    On December 27, 2013, the Louisiana First Circuit Court of

Appeal affirmed his conviction and sentence.[8]    On June 20, 2014, the Louisiana Supreme

Court denied his application for a writ of certiorari.[9]

On April 15, 2015, Brown filed an application for post-conviction relief with the state

district court.[10]    In that application, he asserted his counsel rendered him ineffective

---

[3]    State Rec., Vol. 1 of 10; Minute Entry, 9/19/12; Trial Transcript, 9/19/12; Verdict, 9/19/12; State Rec., Vol. 2 of 10, Trial Transcript (con't), 9/19/12.

[4]    State Rec., Vol. 1 of 10, Minute Entry, 12/17/12; State. Rec., Vol. 2 of 10, Sentencing Transcript, 12/17/12.

[5]    State Rec., Vol. 1 of 10, Multiple Offender Bill of Information, 9/20/12.

[6]    State Rec., Vol. 1 of 10, Minute Entry, 2/4/13; Reasons for Judgment, 2/20/13; State. Rec., Vol. 2 of 10, Re-Sentencing Transcript, 2/4/13.

[7]    State Rec., Vol. 5 of 10, Appeal Brief, 2013-KA-0814, 7/17/13.

[8]    *State v. Brown*, 2013-KA-0814, 2013 WL 6858309 (La. App. 1 Cir. 12/27/13), State Rec., Vol. 7 of 10.

[9]    *State v. Brown*, 2014-K-0194 (La. 6/20/14), 141 So. 3d 808; State Rec. Vol. 6 of 10.

[10]    State Rec., Vol. 7 of 10, Uniform Application for Post-Conviction Relief and Memorandum in Support of Petition.    Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).    The post-conviction

assistance by failing to: (1) object and appeal the trial court's denial of the motion to quash; (2) object to the amendment of the bill of information on the day of trial and file a motion to quash or to arrest the judgment; and (3) investigate and subpoena dispatch's response to show no escape happened and make contemporaneous objections during cross-examination and closing arguments by the prosecution when the district attorney misled the jury and made prejudicial arguments.    After the State filed a response, the state district court denied the application for post-conviction relief on July 8, 2015.[11]    On August 5, 2015, Brown filed an application for writ with the Louisiana First Circuit Court of Appeal.[12]    The First Circuit denied Brown's writ application on the merits on November 4, 2015.[13]

On November 19, 2015, Brown filed a writ application with the Louisiana Supreme Court.[14]    On March 3, 2017, the Louisiana Supreme Court denied Brown's petition for writ of certiorari finding, "Relator fails to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)."[15]

On April 6, 2017, Brown filed the instant application for habeas corpus relief.[16]    In

---

application made a part of the state record is dated April 15, 2015.

[11]    State Rec., Vol. 7 of 10, State District Court Order denying post-conviction relief, 7/8/15.

[12]    State Rec., Vol. 8 of 10, 1st Circuit Writ Application, 15-KW-1129, 8/5/15.

[13]    State Rec., Vol. 8 of 10, State v. Brown, 15 KW 1229 (La. App. 1 Cir. 11/4/15) (unpublished).

[14]    State Rec., Vol. 9 of 10, La. Supreme Court Writ Application, 15 KH 2155, 11/25/15 (dated 11/19/15).

[15]    State ex rel Brown v. State, 15-2155 (La. 3/31/17), 214 So. 3d 845 (per curiam); State Rec., Vol. 9 of 10.

[16]    Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus, certified April 6, 2017.

that application, Brown claims there was insufficient evidence to support the simple-escape conviction.    He also claims he was denied effective assistance of trial counsel for failing to: (1) object to the trial court's denial of the motion to quash; (2) object to the amendment of the bill of information on the day of trial and file a motion to quash or a motion to arrest the judgment based on double jeopardy; (3) investigate and subpoena dispatch's response to show no escape happened; and (4) make contemporaneous objections during cross-examination and closing arguments by the prosecution when the district attorney misled the jury and made prejudicial arguments.    He also claims ineffective assistance of appellate counsel for failing to assign as error on appeal the denial of the motion to quash.

The State concedes that Brown's petition is not successive, that the federal application is timely, and that the claims are exhausted.    It contends that the claims should be dismissed on the merits.[17]

Facts

The following facts were established at trial and summarized by the Louisiana First Circuit Court of Appeal:

> On September 14, 2010, Agent Carli Messina,[1] the defendant's parole officer with the Louisiana Department of Public Safety and Corrections ("Probation and Parole"), was attempting to make contact with the defendant to arrest him on a parole warrant for a parole violation.    When it was determined through an anonymous tip that the defendant would be on Third Street in Mandeville, Louisiana, four agents, including Agent Messina, in three patrol units converged on that location.    The other three agents were Joseph Cotton, Brandon Pohlmann, and Lindsey Norton, all with Probation and Parole. The unmarked units had emergency lights on the front and rear of them. Agent Pohlmann was wearing a shirt with a gold Louisiana badge on the chest. The other three agents were wearing a black tactical vest with the word "POLICE" on the front and back.    As the defendant was preparing to drop his wife off at work, he passed near Agent Messina's vehicle and saw her.    When

---

[17]  Rec. Doc. 12.

4

the defendant recognized his parole officer, he kept driving.    The three units followed the defendant with their emergency lights on, but the defendant continued to drive.    When the defendant eventually came to a stop, Agent Cotton pulled his unit in front of the defendant's vehicle and Agent Pohlmann pulled his unit directly behind the defendant's vehicle. Agents Cotton and Pohlmann approached the defendant's vehicle with weapons drawn, identified themselves as the police and shouted at the defendant to show his hands.    The defendant raised his hands.    They then ordered the defendant to put the vehicle in park and to turn off the engine.    The defendant complied without incident.

[1]At the time of this incident, she was Agent Messina, but subsequently she was married and began working at the St. Tammany Parish Sheriff's Office; therefore, at trial, she was referred to as Detective Farrell.

Agent Pohlmann holstered his weapon and removed the defendant from the vehicle.    Agent Pohlmann then applied an arm bar—a type of compliant escort technique—on the defendant and escorted the defendant to the back of the defendant's car.    An eyewitness to this event, Zachary Lloyd, testified at trial that he saw the parole officers make the defendant place his hands on the trunk.    When the defendant saw Agent Messina approach him with handcuffs, the defendant broke away from Agent Pohlmann's hold and began to run away.    Agents Cotton and Pohlmann immediately caught up with the defendant and attempted to subdue him; however, the defendant fought to break away and, during the struggle, he managed to slip out of the basketball jersey he was wearing and run away.

When the defendant broke away from Agents Cotton and Pohlmann, he outran them until the agents lost sight of him.    Agent Norton radioed St. Tammany Parish Sheriff's Office for assistance.    A perimeter was set up and the Sheriff's Office sent the canine division and a helicopter to locate the defendant.    At about 2:30 p.m. the search was called off because children were being dismissed from the schools in the area.    The next day, after speaking with the defendant's wife, the police found the defendant at a Super Eight Motel in Covington.    The defendant was arrested without incident.[18]

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to

---

[18]    *State v. Brown*, 2013-KA-0814, 2013 WL 6858309, at *1-2 (La. App. 1 Cir. 12/27/13).

the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1) ] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S. Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1866 (2010) ( "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts.    28 U.S.C. § 2254(d).    With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply.    *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).    Instead, the federal courts review those claims under pre-AEDPA de novo standards of review.    *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

*Claims for Relief*

1.  *Sufficiency of the Evidence*

Brown claims that the evidence was insufficient to support his conviction for simple escape because he was not in lawful custody when he fled from the agents.    The First Circuit rejected this claim on direct appeal, reasoning as follows:

> The defendant argues that the State did not prove he was in lawful custody as required under the simple escape statute.    The defendant contends he was not in lawful custody when he ran from the officers. According to the defendant, the officers had not placed him under arrest, handcuffed him, or told him there was an arrest warrant for his arrest; rather the only actions the officers took before the defendant ran was to have him exit the vehicle and escort him to the back of that vehicle.
>
> The substance of the defendant's contention is that he was not in custody, i.e., under arrest, at the time he fled.    If the defendant was fleeing to avoid arrest, then he cannot be guilty of simple escape.    Thus, the issue is whether the defendant was under arrest at the time he fled from the agents. *See State v. Smith*, 96–0222, p. 4 (La. App. 1 Cir. 12/20/96), 686 So. 2d 137, 141, *writ denied*, 97–0070 (La. 5/16/97), 693 So. 2d 796.
>
> Arrest is the taking of one person into custody by another.    To constitute arrest there must be an actual restraint of the person.    The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.    La. Code Crim. P. art. 201.    An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest.    *State v. Jarmon*, 543 So. 2d 93, 98 (La. App. 1 Cir. 4/11/89), *writ denied*, 551 So. 2d 1334 (La. 1989). Restraint may be imposed by either or both an officer's words and actions. *State v. Siggers*, 490 So. 2d 716, 721 (La. App. 2 Cir.), *writ denied*, 494 So. 2d 1182 (La. 1986).
>
> Arrest is a question which must be determined objectively and in retrospect, in light of the circumstances of the particular case.    Factors to be considered include time, place, police intent, the suspect's belief, and existence of a warrant or, if no warrant exists, probable cause to arrest.    No one factor will solely control every determination.    The subjective intent of the police, if disclosed to the suspect, is relevant, but only to the extent it would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his freedom of action.    The suspect's belief must be determined objectively, in retrospect, from the totality of the circumstances. *Smith* at pp. 4–5, 686 So. 2d at 141.
>
> In *State v. Raheem*, 464 So. 2d 293, 296 (La. 1985), the supreme court found that an arrest occurred when officers stopped a car, drew their

weapons, ordered the defendants out of the car, and had them place their hands on the vehicle.    The fact the defendants were not verbally advised of their arrest until after a detective searched a defendant's purse did not alter the fact of arrest.    In *Jarmon*, 543 So. 2d at 98, the officers had drawn their weapons during the stop of the defendant's jeep.    This court concluded the defendant was under arrest from the moment he exited the jeep in compliance with the police and was patted down by them.

In *State v. Foley*, 570 So. 2d 171, 174 (La. App. 5 Cir.1990), *writ denied*, 576 So. 2d 27 (La. 1991), the defendant was found to be under arrest when the officers approached the vehicle he was in with a weapon drawn, removed the defendant from the vehicle, and placed his hands on it; the fact the defendant had not been advised verbally of his arrest until later did not alter the fact of arrest.    *See State v. Simmons*, 95–309 (La. App. 5th Cir.10/18/95), 663 So .2d 790, 794, p. 5 (where the court found the circumstances indicated an arrest occurred when a detective ordered the defendant to exit the car and commanded him to step to the rear of the car and to place his hands on it); *State v. Francise*, 597 So. 2d 28, 33 (La. App. 1 Cir.1992), *writ denied*, 604 So. 2d 970 (La. 1992) (where this court found that where the officers successfully stopped the defendant's vehicle, drew their weapons, ordered the defendant and a passenger out of the vehicle, and had them place their hands on the vehicle, an arrest occurred); *State v. Knight*, 574 So. 2d 483, 486 (La. App. 4 Cir.1991) (where the court concluded that the officers lawfully had the defendant under arrest when they stopped his vehicle, ordered him out of the car and placed his hands on the vehicle prior to searching his person); *State v. Desdunes*, 576 So. 2d 520, 528 (La. App. 4 Cir.1990) (where the court found that when an officer approached the defendant and forcibly opened his hand to determine whether it contained drugs, the officer had "effected an extended restraint" on the defendant and he was effectively under arrest); *State v. Davis*, 558 So. 2d 1379, 1382 (La. App. 5 Cir.1990) (where the court found an arrest occurred when officers, after a drug transaction by the defendant, drove their car into the lot, got out, and ordered the defendant and his companion to put their hands on the car).

In the instant matter, where the numerous factors of arrest include at a minimum those factors in the foregoing jurisprudence, the circumstances clearly indicate an intent by the agents to effect an extended restraint on the liberty of the agents.    The defendants were executing a parole warrant for a parole violation.    The agents surrounded the defendant's vehicle with their units to prevent him from driving any further.    With their weapons drawn, the agents shouted commands at the defendant.    The defendant was ordered to show his hands, park the vehicle and turn off the engine.    The defendant complied immediately without incident.    The defendant was then physically removed from the vehicle and escorted by arm-bar to the back of the vehicle. At this point, the defendant had submitted himself to the custody of the agents. *See* La. Code Crim. P. art. 201. The defendant proceeded to break away from the agent to avoid being handcuffed.    When the defendant ran and was subdued shortly thereafter by the two male agents, the defendant struggled

again to get away.    During this fracas, the agents trying to subdue the defendant were screaming at him to stop resisting.    When the defendant broke away, the agents chased him, but the defendant kept running until he could no longer be seen or found.    All of the actions by the agents indicated an intent to restrain the defendant for an extended period, and the defendant's reaction to the agents, in doing anything in his power to not remain constrained, clearly suggests he knew or should have known he was under arrest.    The totality of the circumstances evidence a restraint on the defendant's liberty to an extent that any reasonable person would have believed he was in custody.    *Smith* at p. 5, 686 So. 2d at 141–42.

The jury heard the testimony and viewed the evidence presented to it at trial and found the defendant guilty.    It is clear from the finding of guilt that the jury believed Agents Messina's and Pohlmann's version of events. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness.    *State v. Clouatre*, 2012–0407, p. 8 (La. App. 1 Cir. 11/14/12), 110 So. 3d 1094, 1100.    When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *Id.*    The trier of fact's determination of the weight to be given evidence is not subject to appellate review. *Id.*    An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt.    *Id.* at pp. 8–9, 110 So. 3d at 1100.    We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases.    *State v. Quinn*, 479 So. 2d 592, 596 (La. App. 1 Cir.1985).    The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient.    *Id.*    The assignment of error is without merit.[19]

The Louisiana Supreme Court denied relief without assigning additional reasons.

Because a sufficiency-of-the-evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La.

---

[19]  *Brown*, 2013 WL 6858309, at *2-4.

Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).     For the following reasons, the Court finds that Brown has made no such showing.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a federal habeas court addressing an insufficiency-of-the-evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.     *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).     Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.     *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n. 16).     The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.     *See McDaniel v. Bro*wn, 558 U.S. 120, 131, 130 S. Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.     *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.     *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.' " *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)). Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062 (2012).

Brown was convicted by a jury of simple escape. To obtain a conviction for simple escape, the State must prove "(1) an intentional departure (2) under circumstances wherein human life is not endangered (3) by a person imprisoned, committed, or detained (4) from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections." *State In Interest of A.F.*, No. 2013 KJ 0609, 2013 WL 5314701, at *2 (La. 1 Cir. 9/20/13); *see* La. Rev. Stat. § 14:110(A)(1).

Brown contends that he was not in lawful custody or under arrest at the time he fled. "Lawful custody" applies to persons who have been arrested but not yet confined. *State v. Jeanfreau*, No. 2011 KA 1237, 2012 WL 602384, at *4 (La. App. 1 Cir. 2/10/12). Here the record as a whole contains more than sufficient evidence introduced by the State for the jury to have concluded that Brown was in lawful custody of law enforcement.

12

The jury heard testimony that law enforcement had a warrant to arrest Brown on a parole violation.[20]    Agents Messina, Norton, Cotton, and Brandon waited at Brown's wife's place of employment for Brown to drop off his wife, Ashley Nelson.[21]    Agent Messina testified that Brown saw Messina and drove away without dropping off Nelson.[22]    All three law enforcement units, with the vehicles' red and blue vehicle lights activated, followed Brown's vehicle.[23]    When Brown stopped, the agents boxed in his vehicle to prevent him from leaving.[24]    Agent Messina testified that Agent Pohlmann and Agent Cotton, who had his gun drawn, advised Brown, "show me your hands, show me your hands, get out of the car and show me your hands."[25]    Agent Messina explained that Agent Pohlmann took custody of Brown by placing him in an "arm bar" and walked him back to Pohlmann's vehicle.[26] Agent Messina testified that when Brown saw her approaching him carrying her handcuffs, Brown pulled away from Polmann, attempted to strike Messina and pushed her to the ground and fled the scene.[27]

The jury also heard testimony from Agent Pohlmann, who testified that when Brown drove past the area, Agent Messina radioed that she believed Brown had spotted her and that

---

[20]   State Rec., Vol. 2 of 10, Trial Transcript (con't), pp. 169, 190, 203, 208, 215, 9/19/12.

[21]   *Id.*, at p. 170, 208.

[22]   *Id.*, at p. 171.

[23]   *Id.*, at pp. 172, 208.

[24]   *Id.*, at pp. 172, 181, 208.

[25]   *Id.*, at pp. 172-73, 183, 190.

[26]   *Id.*, at pp. 173, 182, 184-85.

[27]   *Id.*, at pp. 174-79, 183, 190.

they should initiate a traffic stop.[28]    Agent Polhmann testified that, once Brown had stopped his vehicle, he approached Brown's vehicle with his gun drawn and that he and Agent Cotton were screaming, "police, show me your hands, police, show me your hands."[29] Pohlmann explained that he placed Brown in a "compliant escort position" and walked him to the back of Pohlmann's vehicle.[30]    Agent Polhmann recalled that, as soon as Brown saw Agent Messina, a struggle ensued and Brown ultimately fled the scene.[31]

Here, the state court articulated the proper controlling law and reasonably applied the governing legal principles to the evidence adduced at trial.    When the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was irrational.    Therefore, Brown cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

2. *Ineffective Assistance of Counsel*

Brown claims that his trial counsel was constitutionally ineffective for failing to object to the state district court's denial of the motion to quash and to object to the amendment of the information on the day of trial.    He further contends that the bill of information was defective and that his counsel should have filed a motion to quash or to arrest judgment

---

[28]  *Id.*, at p. 208.

[29]  *Id.*, at p. 209.

[30]  *Id.*, at pp. 210, 219-220.

[31]  *Id.*, at pp. 210-215, 221-222.

based on double jeopardy.   In faulting his counsel's pretrial preparation, he claims his counsel did not investigate and subpoena police dispatch's records and was not aware of Agent Messina's affidavit or the arrest warrant related to the offense.   He claims his counsel was also ineffective for failing to make contemporaneous objections during cross-examination and to object to the prosecutor's closing argument.   Finally, he claims his appellate counsel was ineffective for failing to assign as error on appeal the state district court's denial of the motion to quash.

The state district court rejected Brown's claims that his counsel rendered ineffective assistance raised on post-conviction relief, stating: "The Court finds that Petitioner has failed to prove grounds upon which relief shall be granted.   Accordingly, this Court finds that the Petition of defendant is without merit and must be denied."[32]   The First Circuit Court of Appeal denied Brown's related writ application without stated reasons.[33]   The Louisiana Supreme Court denied writs finding "Relator fails to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).   We attach hereto and make a part hereof the district court's written reasons denying relief."[34]

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.   Specifically, a petitioner seeking relief must demonstrate both deficient performance by counsel and that the deficient performance

---

[32]   State Rec., Vol. 7 of 10, State District Court Order denying post-conviction relief, 7/8/15.

[33]   State Rec., Vol. 7 of 10, *State v. Brown*, 15-KW-1229 (La. App. 1 11/4/15) (unpublished).

[34]   State Rec., Vol. 7 of 10, *State ex rel. Brown v. Brown*, No. 2015–KH–2155 (La. 3/31/17), 214 So. 3d 845; State Rec., Vol. 7 of 10.

prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984).    A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' "    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."

*Id.*    In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."    *Crockett*, 796 F.2d at 793.

Because the state courts rejected Brown's ineffective-assistance-of-counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

**(a) Trial Counsel**

Brown claims that the bill of information was defective in that it did not provide him with notice of the charges and that his counsel was ineffective for failing to file a motion based on a defective bill.

The Supreme Court has held that an indictment or bill of information is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense and affords him protection against double jeopardy.    *United States v. Debrow*, 346 U.S. 374 (1953).    The Louisiana Code of Criminal Procedure provides that "[t]he indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged."    La. Code Crim. P. art. 464.[35]

---

[35] For many years, Louisiana courts insisted that charging documents be technically sufficient.

The amended bill of information charged Brown with resisting arrest with force or violence and simple escape as follows[36]:

> Count 1
> R.S.14:108.2 RESISTING ARREST WITH FORCE OR VIOLENCE, by resisting the arrest of a police officer during the performance of his duties by an offender who uses threatening force, violence, resistance or opposition during an arrest or injuries or attempts to injure said officer during an arrest.
>
> Count 2
> R.S.14:110(A)(1) Simple Escape

The amended bill of information clearly notified Brown of the statutory provisions he was accused of violating and specified the date of the crimes.   The amended bill of information fairly informed Brown of the precise charges against him so that no prejudice resulted from either surprise or lack of notice, and protected him against further prosecution for the same crime.   Therefore, the bill of information was not fatally defective so as to deprive the trial court of jurisdiction under state law and Brown's counsel was not ineffective

---

However, in *State v. James*, No. 54874 (La.1974), 305 So. 2d 514, the Louisiana Supreme Court changed course, holding:

> [W]here in fact an accused has been fairly informed of the charge against him by the indictment and has not been prejudiced by surprise or lack of notice, the technical sufficiency of an indictment may not be questioned after conviction where, as here, no objection was raised to it prior to the verdict and where, without unfairness, the accused may be protected against further prosecution for any offense or offenses charged by it through examination of the pleadings and the evidence in the instant proceeding.

*Id.* at 516–17.   In reaching that conclusion, the Louisiana Supreme Court noted:

> The defendant's right to know in advance of the trial sufficient particulars as to enable him to defend himself intelligently can be adequately protected by the bill of particulars and other discovery devices authorized and to be authorized.   Similarly, modern technology and the common practice of transcribing the evidence in criminal trials, now protects him against further prosecution for the crime for which tried by an indictment which, although indicating the specific crime charged, might be considered insufficient if strictly construed.

*Id.* at 517.

[36]   State Rec., Vol. 1 of 10, Amended Bill of Information, 9/19/12.

for failing to file a motion based on a defective bill of information.    Further, any challenge to the bill of information by Brown's attorney would have resulted, at most, in an amendment to the charging document to cure any deficiency, thereby achieving, if anything, a mere delay in the trial and resulting in no prejudice in fact to the petitioner.    *See State v. James*, No. 54874 (La. 12/2/74), 305 So. 2d 514, 518 (noting that an objection prior to trial or at trial could have secured an amendment to the charging document).

Brown acknowledges that his counsel filed a motion to quash but claims his counsel was ineffective for failing to object to the state district court's denial of the motion. Brown's trial counsel filed a motion to quash the simple escape charge on August 27, 2012.[37] Counsel argued that Brown was not in lawful custody.    The state district court heard argument prior to jury selection and found whether petitioner was in lawful custody was a question of fact that could not be raised in a motion to quash and denied the motion.[38] While trial counsel did not object to the ruling, no contemporaneous objection was required. La. Code Crim. P. art. 841(B) ("The requirement of an objection shall not apply to the court's ruling on any written motion.").    Counsel therefore did not perform deficiently for failing to object to the state district court's ruling.    Moreover, there is no reason to believe that the trial judge would have reversed his ruling, and so Brown has not shown that he was prejudiced by counsel's inaction.

Brown next argues that trial counsel was ineffective for failing to file a motion to quash the information or to arrest judgment as violative of double-jeopardy principles.

---

[37] State Rec., Vol. 1 of 10, Motion to Quash, 8/27/12.

[38] State Rec., Vol. 1 of 10, Hearing Transcript, 9/19/12.

This claim must fail, as his double-jeopardy argument is meritless, and therefore there was no reason for counsel to file a motion on this basis.

The relevant test to be applied to determine whether two statutes improperly punish the same offense in violation of double jeopardy is to "compare the two statutes at issue and ask whether each provision requires proof of an additional fact which the other does not." *United States v. Singleton*, 16 F.3d 1419, 1422 (5th Cir.1994) (applying test from *Blockburger v. United States*, 284 U.S. 299 (1932)) (quotation marks omitted).

Here, the offenses are clearly distinct.    Simple escape requires "(1) an intentional departure (2) under circumstances wherein human life is not endangered (3) by a person detained (4) from the lawful custody of any law enforcement officer."    *State v. Bullock*, (La. 1991), 576 So. 2d 453, 455.    In contrast, resisting an officer requires "the intentional resistance, opposition or obstruction of an officer authorized by law to make a lawful arrest, when the offender knows or should know the officer arresting is acting in his official capacity."    *State v. Armant*, No. 02-KA-907, (La. App. 5 Cir. 1/28/03), 839 So. 2d 271, 278 (citing *State v. Johnson*, No. 88-KA-280 (La. App. 5 Cir. 1988), 534 So. 2d 529, 531 and La. Rev. Stat. § 14:108).    Because each offense requires the proof of different elements, there is no federal double jeopardy implication.    Accordingly, any such motion to quash or to arrest judgment would have been meritless, and, therefore, counsel cannot be considered ineffective for failing to file it.    *See, e.g.*, *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir.1995) ("Counsel cannot be deficient for failing to press a frivolous point.");

*Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Brown next claims his trial counsel failed to object to amendment of bill of information on the day of trial. Brown's claim is false. The record shows that on September 19, 2013, when the prosecution sought to amend the bill of information to correct the date on which the offenses were alleged to have occurred, Brown's trial counsel objected.[39] The state district court found no prejudice in allowing the amendment and overruled the objection.

Brown next claims his counsel rendered him ineffective assistance for failing to investigate and subpoena dispatch records. Brown claims that had his counsel investigated, the evidence would have shown that police did not call in an escaped parolee. Brown argues, "The Louisiana Probation and Parole, Affidavit for Arrest Warrant does show the charge that was called in to dispatch for back up (resisting arrest by force or violence), not an (escape parolee) as the prosecutor mislead the Jury to believe with the exaggeration of events in the alleged effort to look for petitioner."[40]

With regard to the adequacy of the investigation, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Brown

---

[39] State Rec., Vol. 1 of 10, Hearing Transcript, 9/19/12.

[40] Rec. Doc. 3, pp. 28-29.

presents only self-serving allegation in support of his contention that counsel was ineffective for failing to adequately investigate the evidence.    He presents no objective evidence at all to establish either that his counsel in fact failed to conduct a proper investigation.    Rather, the record reflects that Brown's counsel actively participated in discovery and filed numerous motions seeking discovery.[41]

Brown's specific claim that his counsel did not subpoena the dispatch records is belied by the record.    The record reflects that Brown's trial counsel filed a motion seeking the issuance of a subpoena for production of the St. Tammany Parish Sheriff's Office dispatch and communication tapes related to the charges, including radio communication tapes, 911 call tapes, police unit video surveillance, communication log printouts and all related transcripts.[42]    The state district court granted the motion on May 31, 2011.[43]

The record further reflects that Brown's trial counsel was familiar with Agent Messina's report of the incident and her affidavit in support of the arrest warrant.    Brown's counsel cross-examined Agent Messina about both the report and the affidavit.[44]    Agent Messina admitted that she did not mention escape in her police report.[45]    She further

---

[41]    State Rec., Vol. 1 of 10, Motion for Discovery and Reservation of Rights to File Additional Pretrial Motions, 11/29/10; Omnibus Motions and Order for Pretrial Motions, 1/12/11; Motion for Production of the Police/Sheriff Incident Report of the Investigation, 1/12/11; Motion for Bill of Particulars and Discovery and Inspection, 1/12/11; Motion for Disclosure of Impeaching Information, 1/12/11; Motion for Subpoena Duces Tecum for Copy of Probation File, 7/22/11; Order, 7/22/11; Motion for Subpoena Duces Tecum for Copy of Probation File, 8/8/11, Order, 8/8/11; State Rec., Vol. 3 of 10, State's Answer to Motions for Discovery and Inspection, 11/8/10; Motion to Place Discovery Under Seal 9/24/12.

[42]    State Rec., Vol. 1 of 10, Motion for Subpoena Duces Tecum for Dispatch and All Other Communication Tapes, 5/25/11.

[43]    State Rec., Vol. 1 of 10, Order, 5/31/11.

[44]    State Rec., Vol. 2 of 10, Trial Transcript, pp. 199-200, 9/19/12.

[45]    *Id.* at 200.

admitted that the resulting arrest warrant was not for escape but rather for resisting a police officer with force or violence.[46]    In closing argument, Brown's counsel highlighted Agent Messina's testimony and, in arguing that Brown was not guilty of escape, argued, "What screams in this case as well is the detective testified what did you charge him with in your arrest warrant?    Resisting arrest by force or violence.    What's in your report?    Resisting arrest by force or violence.    Did you mention at all an escape?    No."[47]    He further argued, "If you think it's important that the agent that wrote this report, did the arrest warrant, said this was a resisting arrest and that was it, tell the other jurors that."[48]    The jury obviously rejected the defense that petitioner solely resisted arrest, but was not guilty of escape because he was never in custody.    The fact that the jury chose not to accept Brown's defense does not render his counsel ineffective.    *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."); *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052 ("[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.") (citations omitted).

Brown's final claim of ineffective assistance of trial counsel is that his counsel failed to object to Agent Messina's testimony related to the search for Brown and the prosecution's closing argument.

Brown complains that the following testimony by Agent Messina regarding the response by St. Tammany Sheriff's Office was irrelevant and unfairly prejudicial:

---

[46]    *Id.*, at p. 20.

[47]    *Id.*, at p. 283.

[48]    *Id.*, at p. 287.

> The sheriff's office sent the canine division.    They had a helicopter that belonged to the sheriff's office, so the pilot was called out to come in the air and search for Travis as well.    The street crimes unit, the narcotics division, special operations Mandeville Police Department as well because parts of Meadowbrook are in Mandeville jurisdiction.    There was a great effort in looking for Travis.[49]

He further claims that his counsel should have objected to Messina's testimony that, "We eventually –This started at 1:45 is when this all started and school usually lets out in Mandeville area – The high school lets out at 2:22, I believe, and the middle schools three-something.    So it got to the point, you know, we had to call it off."[50]    Brown claims that this account of the search was exaggerated and that it was "highly unlikely and unproven that state had a helicopter, canine unit, narcotics division, street crimes, the special operations division, road patrol, multiagency effect, and especially the sheriff's office SWAT team, which would not have been called in especially for a search that lasted approximately 30 minutes then to call off the search."[51]

Agent Messina's testimony regarding the search for Brown was probative because it explained the events leading to the ultimate apprehension of the petitioner.    Further, Brown points to no evidence supporting a finding that Messina's testimony was false or exaggerated.    To the contrary, Messina's testimony was supported by her reports of the incident as the testimony of other witnesses.    Specifically, Agent Messina stated in her report that multiple patrol units, an air unit and canine units assisted in the search for

---

[49]  *Id.,* at p. 179.

[50]  *Id.*

[51]  Rec. Doc. 3, p. 28.

Brown.[52]     Agent Pohlmann testified that a helicopter and a canine unit were utilized during

the search.[53]     Detective Stevens with the St. Tammany Sheriff's Office Narcotics Division,

who was summoned to help search for Brown, similarly testified about the involvement of a

helicopter and canines.[54]     Because Brown has not established that the testimony was

improper, he cannot show that counsel was ineffective for failing to object to its admission.

Trial counsel's performance can never be deficient for failing to make a specious objection.

*Clark*, 19 F.3d at 966; *see also Kimler*, 167 F.3d at 893.

Brown also complains that his counsel should have objected when the prosecution

inaccurately described the escape statute in stating, "You know simple escape shows that

he's departing from lawful custody or from being detained when you a lawful arrest seeking

to be made."[55]     He argues that the prosecution misled the jury into believing that he was in

lawful custody because police had a warrant and were seeking to lawfully arrest him.

Brown also claims the prosecution led the jury to believe that law enforcement reported an

escaped parolee when it argued:

> Ladies and gentlemen, that is how this case is and if you think – if you're tempted to think that this case is unimportant, that it's not – it really doesn't matter, it's a parolee trying to get away, fighting with his parole agents, look at the response that the sheriff's office had once they were notified that this had happened.     That they were looking for an escaped parolee.
> You've got helicopters, canine units, the narcotics division is called out, street crimes, the special operations division.     Basically the sheriff's office SWAT team.     You've got road patrol.     Mandeville PD even comes out.

---

[52]  State Rec., Vol. 3 of 10, Offense Report, 9/17/10; Supplemental Report, 9/ 20/10.

[53]  State Rec., Vol. 2 of 10, Trial Transcript (con't), p. 215, 9/19/12.

[54]  *Id.*, pp. at 230-32.

[55]  *Id.*, at p. 275.

You've got a multi-agency effort at this point.    So make no mistake, ladies and gentlemen, this case matters.    It's important.[56]

A prosecutor's argument does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the state-court trial was rendered fundamentally unfair in violation of due process.    *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir.1988). Due process requires reversal when the prosecutor's argument or comments "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir.1987).    The prosecutor's remarks must be evaluated in the context of the entire trial. *Greer v. Miller*, 483 U.S. 756, 765–66 (1987) (citing *Darden*, 477 U.S. at 179); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir.1985).    "[It] is not enough that the prosecutors' remarks were undesirable or even universally condemned."    *Darden*, 477 U.S. at 181 (citations and quotations omitted).    To obtain federal habeas relief based on allegations of improper prosecutorial comment or argument, a petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Jones*, 864 F.2d at 356; *Hogue v. Scott*, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994).

Even if the comments could be viewed as improper, they did not come close to infecting the trial with unfairness.    The comments, when evaluated in the context of the trial as a whole, were neither persistent nor pronounced.    Further, the evidence of guilt was not so insubstantial that the conviction would not have occurred but for the remarks. Additionally, the jury was instructed that the attorneys' closing arguments were not

---

[56] *Id.*, at p. 276.

evidence,[57] and there is no reason to believe that they disregarded that instruction. Moreover, in any event, it simply cannot be said that there is a reasonable probability that the result of the proceeding would have been different if only defense counsel had objected to the remarks.   The state district court properly instructed the jury that in order to find Brown guilty of simple escape, they had to find that he intentionally departed from Messini and/or Pohlmann and that he was in lawful custody at the time of his intentional departure.[58] Therefore, he cannot show the prejudice necessary to warrant relief.

Viewing defense counsel's behavior in light of the facts and circumstances of this case, the Court finds that the Brown has failed to overcome the strong presumption that counsel's behavior fell within the wide range of reasonable representation.   In addition, he fails to establish any prejudice to him as a result of counsel's performance.

### (b) Appellate Counsel

Finally, Brown contends that his appellate counsel was ineffective for failing to appeal the state district court's denial of the motion to quash.

The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel.   *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)).   In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).   Failing to raise every meritorious

---

[57]   State Rec., Vol. 1 of 10, Jury Instructions, p. 2, 9/19/12.

[58]   *Id.*, at p. 7.

claim on appeal does not make counsel deficient.    *Green v. Johnson*, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989)).    When alleging ineffective assistance of appellate counsel, a petitioner "must show that the neglected claim would have had a reasonable probability of success on appeal."    *Duhamel*, 955 F.2d at 967.    Courts give great deference to professional appellate strategy for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues.["]    *Jones v. Barnes*, 463 U.S. 745 (1983).    This is true even where the weaker arguments have merit. *Id.* at 751–52.    The applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal.    *See, e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Appellate counsel reasonably determined that it was not in Brown's best interest to raise the claim and chose to pursue the undoubtedly stronger claim with potential merit, *i.e.*, sufficiency of the evidence.    A claim that the motion to quash the simple escape charge because Brown was not in lawful custody was wrongly denied was certainly no stronger; on the contrary, it was much weaker.    A factual-innocence argument simply is not one of the grounds on which an information can be quashed.    La. Code Crim. P. art. 532; *see State v. Rembert*, No. 55807 (La. 4/24/75), 312 So. 2d 282, 284 ("The motion to quash is essentially a mechanism by which to raise pre-trial pleas of defense, those which do not go to the merits of the charge .... [T]he the question of factual guilt or innocence of the offense charged is not raised by the motion to quash." (emphasis added)); *State v. Trevino*, 07-870 (La. App. 5 Cir. 5/27/08), 985 So. 2d 851, 856-57 ("When considering a motion to quash, the trial court must accept as true the facts contained in the bill of information and the bills of particulars, and

determine as a matter of law and from the face of the pleadings, whether a crime has been charged; while evidence may be adduced, such may not include a defense on the merits. Fact-intensive inquiries regarding the sufficiency of the evidence and merits of the case are not properly raised by a motion to quash; rather, they should be decided on the evidence at trial.") (footnotes and citations omitted); *State v. Schmolke*, 2012–KA–0406 (La. App. 4 Cir. 1/16/13), 108 So. 3d 296, 298–99 ("So long as the facts accepted as true can conceivably satisfy an essential element of the crime, the accused person can be compelled to stand trial for the charge. Essentially, the inquiry is whether any conceivable set of the facts as alleged in the bill of information together with those specified in the bill of particulars (when particulars have been provided) if found credible by the trier of fact can support a conviction." (citation and quotation marks omitted)).    Accordingly, any claim on appeal that the trial court erred in denying the motion to quash would have been weak at best and arguably even frivolous.    Appellate counsel need not present every non-frivolous ground that could have been raised on direct appeal and certainly not claims based upon weak or non-meritorious arguments.    *See Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013).

For these reasons, it is clear that Brown has not demonstrated that the state court's decision rejecting his ineffective-assistance-of-counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court denies relief.    He is not entitled to federal habeas corpus relief on this claim.

### **RECOMMENDATION**

**IT IS RECOMMENDED** that Brown's application for federal habeas corpus relief be

**DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[59]

New Orleans, Louisiana, this __27th__ day of __December__, 2017.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[59] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.